UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLAS PRADA,

    Plaintiff,

v.

TRIFECTA PRODUCTIONS, LLC
(D/B/A TOMUKUN NOODLE BAR),

    Defendant.

Case No. 20-cv-12348

Hon.

_____

Noah S. Hurwitz (P74063)
NACHTLAW, P.C.
Attorneys for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nhurwitz@nachtlaw.com

_____

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the complaint.

## COMPLAINT AND JURY DEMAND

Plaintiff Nicolas Prada, by and through his attorneys, NACHTLAW, P.C., hereby alleges as follows:

## INTRODUCTION

1. Plaintiff Nicolas Prada, a waiter and assistant manager at Tomukun Noodle Bar in Ann Arbor, Michigan, became ill on or around June 24, 2020 with

COVID-19 symptoms. He responsibly reported the situation to his manager and stayed home sick from work. Mr. Prada would subsequently test positive for COVID-19 on June 27, 2020. As a frontline essential worker, Mr. Prada risked his health for the benefit of the restaurant and its customers. After refusing to pay him legally required sick leave compensation, Tomukun Noodle Bar unceremoniously fired Mr. Prada after interrogating him regarding the origin of his illness and telling him that "for PR reasons it would be best for you not to come back." For these and other reasons, the restaurant's actions violate the Families First Coronavirus Response Act ("FFCRA"), the Emergency Paid Sick Leave Act ("EPLSA") (which is a part of the FFCRA), the Family Medical Leave Act ("FMLA"), Fair Labor Standards Act ("FLSA") and Governor Gretchen Whitmer's Executive Order 2020-36.

## PARTIES AND JURISDICTION

2. Plaintiff Nicolas Prada is an individual residing in Ann Arbor, Michigan, which is located in Washtenaw County.

3. Defendant Trifecta Productions, LLC (d/b/a Tomukun Noodle Bar) (hereafter "Tomukun Noodle Bar") is a company with its registered business address in Ann Arbor, Michigan, which is located in Washtenaw County.

4. The events at issue occurred in Ann Arbor, Michigan, which lies in Washtenaw County and the Eastern District of Michigan.

5. This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff brings his claim pursuant to the Emergency Paid Sick Leave Act ("EPLSA") and the Families First Coronavirus Response Act ("FFCRA"), 29 C.F.R. § 826.150(a); Pub. L. No. 116-127, § 5104, 134 Stat. 178 (2020), the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*.

6. Venue is proper in this Court because Defendant obligated itself to Plaintiff within the Eastern District of Michigan, Defendant's registered business address is located within the Eastern District of Michigan, and Plaintiff resides within the Eastern District of Michigan.

## **GENERAL ALLEGATIONS**

7. Tomukun is a for-profit restaurant on the University of Michigan campus.

8. Plaintiff worked as a waiter and assistant manager at Tomukun Noodle Bar from January 2018 until July 11, 2020.

9. Plaintiff became ill on or around June 24, 2020 with COVID-19 symptoms, including muscle aches and fever.

10. Plaintiff reported the situation to his manager and stayed home sick from work.

3

11. Plaintiff would subsequently test positive for COVID-19 on June 27, 2020.

12. As a frontline essential worker, Plaintiff risked his health for the benefit of the restaurant and its customers.

13. Plaintiff does not know where he contracted the illness.

14. After his positive COVID-19 test, Plaintiff was contacted by the Washtenaw County Health Department and ordered to self-quarantine for two weeks, which he did.

15. On July 10, 2020, Plaintiff text messaged his manager to request a return to work. Plaintiff informed his manager, "I got an email from the Washtenaw Health Department that I should be good." Plaintiff was told that "Tom will message you." "Tom" is the nickname of Yong Hum Yon, an owner of Tomukun Noodle Bar.

16. On July 11, 2020, Plaintiff had a 22 minute, 6 second call with Mr. Yon.

17. Mr. Yon asked Plaintiff how he contracted the virus.

18. Mr. Yon interrogated Plaintiff as to whether he had "been out partying and acting irresponsible."

19. Mr. Yon alleged that there was evidence on social media of Plaintiff being in a crowd.

20. Mr. Yon told Plaintiff, "for PR reasons it would be best for you not to come back to work."

21. Mr. Yon told Plaintiff to apply for unemployment and to "begin looking for other work."

22. Mr. Yon stated that he would call Plaintiff back after he looked into the allegations about Plaintiff being out partying.

23. Tomukun Noodle Bar fired and/or constructively discharged Plaintiff on July 11, 2020.

24. Tomukun Noodle Bar illegally retaliated against Mr. Prada for quarantining in contravention of the Governor's Executive Order and the FFCRA.

25. Michigan Governor Gretchen Whitmer's Executive Order 2020-36 instituted protections for employees during the COVID-19 public health crisis. The Executive Order states it is the "public policy of this state that any and all individuals who test positive for COVID-19 . . . should remain in their home or place of residence . . . until [] three days have passed since their symptoms have resolved, and [] seven days have passed since their symptoms first appeared or since they were swabbed for the test that yielded the positive result." Moreover, the Order expressly forbids "discharging, disciplining, or otherwise retaliating against an employee . . . for staying home from work for the periods described in those sections."

26. Yet, after falling ill and responsibly quarantining, Plaintiff was fired for no other reason than contracting the COVID-19 virus.

27. In addition to disobeying the Governor's Executive Order, Plaintiff's termination violates the FFCRA, which governs employers with less than 500 employees.

28. Specifically, the FFCRA provides for up to 80 hours of paid sick time to employees who are unable to work due to the effects of COVID-19.

29. Tomukun Noodle Bar violated the FFRCA by failing to pay Plaintiff sick pay during his self-quarantine.

30. Enforcement of and all penalties arising from violations of the FFCRA are governed by relevant sections of the FLSA.

31. Notably, the FFCRA states that it is also unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee" who exercises his rights to "take leave in accordance with this Act." An employer that does so is subject to the penalties described in sections 16 and 17 of the FLSA (29 U.S.C. § 216, 217) with respect to such violation, which include lost wages, an equivalent amount of liquidated damages (*i.e.*, double damages), and attorney's fees and costs.

32. Tomukun Noodle Bar did not post the FFCRA Compliance Poster in its establishment.

33. Tomukun Noodle Bar hid the protections of the FFCRA from Plaintiff.

34. Tomukun Noodle Bar is also violating FLSA regulations on tip pooling.

35. Tomukun Noodle Bar utilizes an unlawful tip pooling system where more senior servers receive a greater "tip share" than less experienced servers.

36. Tomukun Noodle Bar does not have a written "tip pool" policy.

37. Tomukun Noodle Bar also takes a "house cut" of five cent (5%) of server tips per shift.

38. The FLSA prohibits any arrangement between the employer and the tipped employee whereby any part of the tip received becomes the property of the employer.

## COUNT I
## VIOLATION OF THE EMERGENCY PAID SICK LEAVE ACT, THE FAMILIES FIRST CORONAVIRUS RESPONSE ACT, AND THE FAMILY MEDICAL LEAVE ACT - INTERFERENCE

39. Plaintiff incorporates all proceeding paragraphs above as though fully stated herein.

40. Congress enacted the FMLA finding that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4).

41. As a result of the COVID-19 pandemic, Congress expanded the FMLA through the EPSLA and the FFCRA to cover employers with under 50 employees for COVID-19 related purposes.

42. The EPSLA/FFCRA allow for employees to utilize the protections of the FMLA if the employee requires leave for "a qualifying need related to a public health emergency" and/or is "experiencing COVID-19 symptoms and is seeking a medical diagnosis."

43. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act.

44. At all relevant times, Tomukun Noodle Bar was a covered employer as defined by the FMLA, the EPSLA/FFCRA, and the applicable federal regulations.

45. Plaintiff is an eligible employee under the definitional terms of the FMLA.

46. Plaintiff required leave for "a qualifying need related to a public health emergency" and/or is "experiencing COVID-19 symptoms and is seeking a medical diagnosis."

47. Tomukun Noodle Bar was aware Plaintiff required leave for these reasons.

48. Plaintiff provided Tomukun Noodle Bar adequate and timely notice of his need to take leave which qualified for the protection of the EPSLA/FFCRA.

49. Tomukun Noodle Bar failed to inform Plaintiff of his right to take paid sick leave for COVID-19.

50. Tomukun Noodle Bar interfered with and denied Plaintiff his EPSLA/FFCRA rights as described above and herein, including, but not limited to, failing to provide Plaintiff with paid leave protected by the EPSLA/FFCRA to address his COVID-19 symptoms and testing and instead discharging Plaintiff from his position, in violation of the FMLA and EPSLA/FFCRA.

51. Tomukun Noodle Bar's actions were intentional, with deliberate disregard for the rights and sensibilities of Plaintiff.

52. Tomukun Noodle Bar's interference with Plaintiff's sick leave has directly and proximately caused Plaintiff great damages, including embarrassment, humiliation, outrage, mental distress and economic loss.

WHEREFORE, Plaintiff is entitled to an award of damages including but not limited to back pay, compensatory damages, liquidated damages, punitive damages, costs, attorneys' fees, prejudgment interest and other damages as allowed by law and equity.

## COUNT II
## VIOLATION OF THE EMERGENCY PAID SICK LEAVE ACT, THE FAMILIES FIRST CORONAVIRUS RESPONSE ACT, AND THE FAMILY MEDICAL LEAVE ACT – RETALIATION

53. Plaintiff incorporates all proceeding paragraphs above as though fully stated herein.

54. Plaintiff had a condition which qualified for protected leave under the EPSLA/FFCRA.

9

55. Plaintiff took leave to quarantine after exhibiting COVID-19 related symptoms and eventually testing positive for COVID-19.

56. Tomukun Noodle Bar retaliated against Plaintiff in violation of the EPSLA/FFCRA leave by terminating him for taking leave which qualified as protected leave in violation of the FMLA and the EPSLA/FFCRA.

57. Tomukun Noodle Bar's actions were intentional, with deliberate disregard for the rights and sensibilities of the Plaintiff.

58. There is a causal connection between Plaintiff's protected activity and Tomukun Noodle Bar's retaliatory actions described above.

59. As a direct and proximate result of Tomukun Noodle Bar's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of reputation, and loss of the ordinary pleasures of everyday life.

60. Tomkun Noodle is subject to the penalties described in sections 16 and 17 of the FLSA (29 U.S.C. § 216, 217) with respect to its EPSLA/FFCRA violation, which include lost wages, an equivalent amount of liquidated damages (*i.e.*, double damages), and attorney's fees and costs.

WHEREFORE, Plaintiff is entitled to an award of damages including but not limited to back pay, compensatory damages, liquidated damages, punitive damages,

costs, attorneys' fees, prejudgment interest and other damages as allowed by law and equity.

## COUNT III
## WRONGFUL TERMINATINO IN VIOLATION OF PUBLIC POLICY

61. Plaintiff incorporates all proceeding paragraphs above as though fully stated herein.

62. On or about July 11, 2020, Tomukun Noodle Bar wrongfully terminated Plaintiff in contravention of public policy.

63. Michigan Governor Gretchen Whitmer's Executive Order 2020-36 instituted protections for employees during the COVID-19 public health crisis.

64. The Executive Order states it is the "public policy of this state that any and all individuals who test positive for COVID-19 . . . should remain in their home or place of residence . . . until [] three days have passed since their symptoms have resolved, and [] seven days have passed since their symptoms first appeared or since they were swabbed for the test that yielded the positive result."

65. The Order expressly forbids "discharging, disciplining, or otherwise retaliating against an employee . . . for staying home from work for the periods described in those sections."

66. Tomukun Noodle Bar terminated Plaintiff for self-quarantine due to his refusal to return to work while under a medical professional's instructions to self-quarantine, which would violate the Executive Order.

67. Tomukun Noodle Bar discharged Plaintiff in illegal retaliation for exercising a right conferred by a government order.

WHEREFORE, Plaintiff is entitled to an award of damages including but not limited to back pay, compensatory damages, liquidated damages, punitive damages, costs, attorneys' fees, prejudgment interest and other damages as allowed by law and equity.

## COUNT IV
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

68. Plaintiff incorporates all proceeding paragraphs above as though fully stated herein.

69. At all times relevant to this action, Plaintiff was Defendant's employee within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

70. Congress designed the FLSA to remedy situations "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). To achieve this broad remedial purpose, the FLSA establishes minimum wage and overtime requirements for covered employees. 29 U.S.C. §§ 206, 207. These provisions, coupled with an effective integrated cause of action within the FLSA, prevent employers from pilfering the wages rightfully earned by their employees.

71. Plaintiff was entitled to be paid the full amount of his tips.

72. The FLSA requires that employers pay employees a minimum hourly wage. 29 U.S.C. § 201, *et seq.* Employers of tipped employees may consider tips as part of the tipped employees' wages, but employers must pay a direct reduced minimum wage if they claim a "tip credit." 29 U.S.C. § 203(m).

73. Tomukun Noodle Bar was not entitled to claim a tip credit because the restaurant took illegal tip deductions from Plaintiff in the form of credit card transaction fees.

74. Tomukun Noodle Bar utilizes an unlawful tip pooling system where more senior servers receive a greater "tip share" than less experienced servers, without fully advising Plaintiff of the nature of the tip sharing policy.

75. Tomukun Noodle Bar habitually deducted a five percent (5%) service charge from each employee gratuity which a customer had charged via a credit card, or similar instrument, in violation of § 203(m)'s command that a tipped employee must be permitted to retain all gratuities received by that employee.

76. The five percent (5%) service charge that Tomukun Noodle Bar retained from Plaintiff's tips exceeded the actual charge for credit card processing levied by the credit card company to the restaurant.

77. The five percent (5%) service charge that Tomukun Noodle Bar retained from Plaintiff's tips enriched the company and harmed the Plaintiff.

78. Because Tomukun Noodle Bar cannot satisfy its burden of showing the applicability of the tip credit, Tomukun Noodle Bar forfeited its entitlement to a tip credit for any of their work hours, and thus it should have to pay Plaintiff the full minimum wage under Michigan law for all time clocked since the Plaintiff is entitled to the full minimum wage for every hour worked.

WHEREFORE, Plaintiff is entitled to an award of damages including but not limited to back pay, compensatory damages, liquidated damages, punitive damages, costs, attorneys' fees, prejudgment interest and other damages as allowed by law and equity.

## RELIEF REQUESTED

For all of the foregoing reasons, Plaintiff Nicolas Prada demands judgment against Tomukun Noodle Bar as follows:

a. Declare the practices and actions of Defendant as illegal under the FFCRA, FMLA and FLSA;

b. Award compensatory damages for monetary and non-monetary loss in whatever amount he is found to be entitled, including back and front pay, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive damages, and any other damages available by law;

c. Award liquidated damages pursuant to the FFCRA, FMLA and FLSA;

d. An award of interest, costs, and reasonable attorneys' fees; and

e. Whatever other relief this Court finds appropriate.

                                                                      Respectfully Submitted,
NACHTLAW, P.C.

/s/ *Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
Attorneys for Plaintiff
101 N. Main Street, Suite 555
Ann Arbor, MI 48104
(734) 663-7550

Dated: August 28, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLAS PRADA,

    Plaintiff,

v.

TRIFECTA PRODUCTIONS, LLC
(D/B/A TOMUKUN NOODLE BAR),

    Defendant.

Case No. 20-cv-12348
Hon.

_____

Noah S. Hurwitz (P74063)
NACHTLAW, P.C.
Attorneys for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nhurwitz@nachtlaw.com

_____

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff Nicolas Prada, by and through his attorneys, NachtLaw, P.C., demands a jury trial for all issues so triable.

    Respectfully Submitted,

    NACHTLAW, P.C.

    /s/ *Noah S. Hurwitz*
    Noah S. Hurwitz (P74063)
    Attorneys for Plaintiff
    101 N. Main Street, Suite 555
    Ann Arbor, MI 48104

Dated: August 28, 2020    (734) 663-7550